# COURT OF APPEALS OF TEXAS.

## TYLER TERM, 1888.

No. 2921.

SAMUEL BROOKS *v.* THE STATE.

1. PRACTICE—WITNESS.—A person who, although a participant and a principal in the offense for which the accused is on trial, is, if he has never been charged with the offense by indictment or information, a competent witness for the accused.
2. ASSAULT TO MURDER—NEW TRIAL—CONTINUANCE.—The defendant in a prosecution for assault with intent to murder applied for a continuance to secure the testimony of one J. The continuance being refused, and the case proceeding to trial, the prosecuting witness testified that the wounds upon his person were inflicted by the defendant, and denied that he had ever stated that the said wounds were inflicted by J., the person named in the defendant's application for a continuance. Three witnesses for the defense testified that, soon after the wounds were inflicted, the prosecuting witness told them that they were inflicted by said J. Other testimony established the presence and participation of J. in the difficulty. *Held*, that in the light of the proof a new trial should have been awarded.

APPEAL from the District Court of Red River. Tried below before the Hon. D. H. Scott.

Under an indictment charging him with an assault with intent to murder one Clain Davis, the appellant was convicted of aggravated assault, and his punishment was assessed at a fine of fifty dollars and confinement in the county jail for thirty days.

Clain Davis was the first witness for the State. He testified, in substance, that he went to the town of Annona, in Red River county, Texas, on the fifth day of March, 1887, and purchased a small supply of crockery ware at the store of Bob Simmons. Thence, with the crockery under his arm, he went to the saloon

of Simmons & Wright, his object being to find his brother, Jeff Davis, and send him home to his sick wife. Soon after he entered the saloon the defendant, who had his open knife in his hand, and Tom Johnson came in. Defendant came to witness and said to him: "Do you remember taking a drink with me at your brother Bill Davis's, when you said that Frank Puckett's wife was not a respectable woman?" Witness replied that he remembered taking the drink but denied that he made the remark about Mrs. Puckett imputed to him. Defendant thereupon called witness a d—d liar and cut him across the muscles of the left arm, across the head, across the shoulder and across the stomach. At the time of the cutting Tom Johnson had hold of the witness but witness could not say that he was aiding and abetting the defendant. Tom Peak, Mr. Williams, Mr. Welborn, Bob Simmons and Jeff Davis, witness's brother, were present at the time of the difficulty. Billy Williams pulled Johnson off the witness and Bob Simmons pulled the defendant off. The witness did not strike defendant first, but struck him, in self defense, immediately after receiving the first blow. The witness denied that, on the night of the day of the difficulty, or at any other time, he told Bob Simmons, Charley Swann, George W. Christian, or anybody else, that Tom Johnson cut him.

William C. Williams testified, for the State, that he was in Simmons's saloon at the time of the difficulty. He did not see the beginning of the trouble. The struggling of the men first attracted his attention, and aroused his excitement. He at once interfered by seizing and pulling one of the parties off. Bob Simmons pulled another one of them off. The witness then discovered that Tom Johnson was the man whom he had pulled off, and that defendant was the man whom Bob Simmons had pulled off. He then observed that Clain Davis was the other man, and that he had been cut on the head and arm. Tom Johnson had hold of Clain Davis's arm when the witness seized him, Johnson.

Jeff Davis, the brother of the prosecuting witness, testified, for the State, that he was in the back room of Simmons's saloon at the time of the difficulty, and did not see it. Just before he left the front, or drinking room, he saw the defendant and some other person come into the saloon. When he returned to the front room, a short time afterwards, he saw defendant with a bloody knife in his hands, and saw that Clain Davis had been

cut. About two weeks previous to the difficulty, defendant told witness that Clain Davis had made a statement, which he did not repeat to witness, that he had to retract. Witness replied that he, witness, had nothing to do with it, and ought not to be spoken to about it. Defendant replied: "No; I am a fool to mention the matter to you."

The State closed.

R. M. Simmons testified, for the defense, that he was behind his bar counter, waiting on customers, when the difficulty began. Davis, defendant and Johnson were scuffling when witness first observed the trouble. Davis, who was much the strongest of the three men, had crowded defendant to the wall and against a shelf. Johnson then had hold of Davis. Witness pulled Davis off of defendant, and then discovered that Davis was cut on the arm and head. He saw no knife or other weapon in the hands of either defendant or Davis. It was the recollection of witness that, immediately after the difficulty, Davis said that Tom Johnson cut him, and he knew positively that, that night, in Doctor Christian's drug store, Davis, in answer to a direct question, stated that Johnson cut him.

Doctor Christian and his clerk, Charley Swann, testified, for the defense, that, soon after he was brought to the former's drug store, on the night of the difficulty, Davis said, in answer to a question, that Tom Johnson cut him.

The defense closed.

W. C. Gaines testified, for the State, in rebuttal, that he was in Christian's drug store on the night of the difficulty, while Davis's wounds were being dressed, and was absent only a few minutes during that time. He heard somebody ask Davis if he knew who cut him. Davis replied that he did, but mentioned no person's name that witness heard.

The motion for new trial raised the question discussed in the opinion.

*Sims & Wright*, for the appellant.

*W. L. Davidson*, Assistant Attorney General, for the State.

WILLSON, JUDGE. A vital issue upon the trial of this case was whether the wounds inflicted upon the injured party were inflicted by the defendant or by one Tom Johnson. The injured party, who is the principal witness for the State, positively testified on the trial that the defendant inflicted the wounds, and

denied that he had ever stated that Tom Johnson inflicted them. It was proved by three witnesses produced by the defendant that the injured party, very shortly after receiving the wounds, stated to them that Tom Johnson was the person who inflicted the wounds. No other witness except the injured party testified that the defendant inflicted the wounds, but all of the witnesses who saw the difficulty testified that Tom Johnson was present, and was engaged in the struggle between the injured party and the defendant.

Defendant applied for a continuance because of the absence of said Tom Johnson. His application shows sufficient diligence, and in all other respects conforms to the requirements of the statute. It was refused by the court.

In view of the suspicion cast upon the testimony of the prosecuting witness, and of the uncertainty of the evidence when considered all together, as to whether the defendant or Tom Johnson inflicted the wounds upon the injured party, we think the facts expected to be proved by said Johnson, as set forth in defendant's application for a continuance, are both material and probably true, and that the trial court should have granted the defendant a new trial. Although Tom Johnson may have inflicted the wounds, not being charged with the offense by indictment or information, he was competent to testify in behalf of the defendant. And if he inflicted the wounds of his own accord, without the concurrence of the defendant, the defendant would not be responsible therefor. Of course, if the evidence should show that the defendant and Johnson acted together in committing an assault upon and wounding the injured party, they would be equally guilty, although Johnson alone inflicted the wounds. These are questions which the jury must determine from the evidence, under proper instructions; and it is the defendant's right, we think, to have the testimony of the witness Johnson before the jury, to be considered and weighed with the other evidence in the case, in arriving at the truth of vital facts about which serious doubt now exists.

There are no other questions presented that demand attention. Because the court erred in refusing the defendant a new trial, to enable him to obtain the testimony of the absent witness, Tom Johnson, the judgment is reversed and the cause is remanded.

*Reversed and remanded.*

Opinion delivered October 10, 1888.